1
Lee H. Durst, Esq. 69704
THE DURST FIRM
2
220 Newport Center Drive
Suite 11285
3
Newport Beach, California 92660
Tel: 949-400-5068 & Fax 714-242-2096
4
Email: lee.durst@gmail.com

5
Craig L. Boucher, Esq., SBN 70230
P.O. Box 120319
6
Big Bear Lake, CA 92315-8911
714-746-5092
7
Email: craigboucher@charter.net

8
LARRY ROTHMAN & ASSOCIATES
9
LARRY ROTHMAN – State Bar No. 72451
City Plaza
10
1 City Boulevard West, Suite 850
11
Orange, California 92868
12
(714) 363 0220  Telephone
(714) 363 0229   Facsimile
13
tocollect@aol.com  E-Mail

14
15
Attorneys for Plaintiffs
16
17
## UNITED DISTRICT COURT
18
## CENTRAL DISTRICT OF CALIFORNIA
19
## SANTA ANA COURT HOUSE
20

21
Lansing E. Eberling and Lura J. Eberling,
22
Plaintiffs,
23
vs.
24
R.M. Sterling Mortgage Services, Inc., a
25
California corporation; John Alvin Bohl,
26
III, an individual; Roy McGovern, an
27
individual; Wells Fargo Bank N.A., a
28
United States corporation; Wachovia

Case No.: 8:10 CV-01831-AG –RNB

[Assigned to the Honorable Andrew J. Guilford, Courtroom 10-D]
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

FILED CONCURRENTLY WITH A PROPOSED FIRST AMENDED COMPLAINT

1   Mortgage Corporation, a North Carolina

2   corporation; World Savings and Loan

3   Association, and DOES 1 TO 100,

4   Inclusive,

5            Defendants.

COMPLAINT FILED 10/18/2010

Hearing:        1/24/2011
Time:           10 a.m.
Dept:           10 D

1
2

## TABLE OF CONTENTS

3  PRELIMINARY STATEMENT ........................................................ 6

4  FIRST CAUSE OF ACTION ......................................................... 10

5  SECOND CAUSE OF ACTION ..................................................... 12

6  THIRD CAUSE OF ACTION ......................................................... 12

7  FIFTH CAUSE OF ACTION ......................................................... 15

8  MEMORANDUM OF POINTS AND AUTHORITIES ....................... 17

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (U.S. 2009)* ..............................................................19

*Bank of Am. v. City & County of S.F., 309 F.3d 551, 558 (9th Cir. 2002)* .........................................7

*Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* .........................19

*Binnick v. Avco Financial Services of Nebraska, Inc., 435 F.Supp. 359, 364-66 (D.Neb.1977)* ...................12

*Burgess v. Charlottesville Savings and Loan Association, 477 F.2d 40, 45 (4th Cir. 1973)* ...................11

*Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-338 (9th Cir. 1996)* .........................................18

*DIRECTV, Inc. v. Cope, 301 F. Supp. 2d 1303, 1304 (M.D. Ala. 2003)* ...........................................19

*GERASTA v. HIBERNIA NATIONAL BANK, 575 F.2d 580 (5th Cir. 1978),* ..............................................10

*Ghirardo v. Antonioli, supra, 8 Cal.4th at p. 798* ..............................................................15

*Gore v. Turner, 563 F.2d 159, 163 (5th Cir. 1977)* ..............................................................12

*Jones v. Wells Fargo Bank (2003) 112 Cal.App.4th 1527, 1534-1535* ........................................15

*Jordan v. Montgomery Ward & Co., 442 F.2d 78, 81-82 (8th Cir.)* .................................................11

*Martin v. Ajax Construction Co., supra, 124 Cal.App.2d at p. 431* ..............................................16

*Mirabal v. General Motors Acceptance Corp., 537 F.2d 871, 875-76 (7th Cir. 1976)* ..............................12

*Mourning v. Family Publications Service, Inc., 411 U.S. 356, 376, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)* ...........11

*Murphy v. Household Finance Corp., 560 F.2d 206, 208-11 (6th Cir. 1977)* ........................................12

*Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001)* ............................................................18

*Porter v. Household Finance Corp. of Columbus, 385 F.Supp. 336, 340-43 (S.D. Ohio 1974)* .......................12

*Sellers v. Wollman, 510 F.2d 119, 123 (5th Cir. 1975)* ..........................................................11

*Sharp v. Mortgage Security Corp. (1932) 215 Cal. 287, 290 [9 P.2d 819]* .........................................15

*Silvas, 514 F.3d at 1005* ....................................................................................7, 9

*Sosa v. Fite, 498 F.2d 114, 117 (5th Cir. 1974)* ...............................................................11

*Strike v. Trans-West Discount Corp. (1979) 92 Cal.App.3d 735, 745 [155 Cal.Rptr. 132]* .........................15

*Toscano v. Ameriquest Mortgage Co., No. 07- 0957, 2007 WL 3125023* .............................................17

*WRI Opportunity Loans II, LLC v. Cooper, 154 Cal.App.4th 525* ..................................................15

*WRI Opportunity Loans II, LLC v. Cooper, id page 542* ....................................................... 16

ZIMMER v. NAWABI, 566 F.Supp.2d 1025 (E.D.Cal. 2008) ............................................ 13


## Statutes

*§ 560.2(c* ............................................................................................................................. 8

*560.2(b)* ............................................................................................................................... 7

*§1463(g)* ............................................................................................................................. 14

*12 C.F.R. § 560.2(a) (2009).* ............................................................................................... 7

12 U.S.C. 1463 (g) ............................................................................................................... 6

12 U.S.C. 1463(g) .............................................................................................................. 16

15 U.S.C. § 1635(b) ........................................................................................................... 10

*Cal. Welf. & Inst.Code § 15610.30(a)(1)-(2)* .................................................................. 17

*Federal Rules of Civil Procedure Rule 12* ........................................................................ 18

*OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)* .................................... 9

*Rule 12(b)(6)* ..................................................................................................................... 18

ZIMMER v. NAWABI, 566 F.Supp.2d 1025 (E.D.Cal. 2008) ............................................ 16

## Other Authorities

*Cal. Const., art. XV, § 1, subds. (1)-(2).)"[4]* .................................................................. 15

California Constitution Article XV. USURY – Sec. 2 ........................................................ 15

## Treatises

*1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 455, pp. 497-98.)* ............... 16

TO THE HONORABLE COURT AND ALL PARTIES OF RECORD:


**PRELIMINARY STATEMENT**

Plaintiffs hereby offer the following Opposition to Defendants' Motion to Dismiss.

Defendants' World Savings & Loan Association, Wachovia Mortgage and Wells Fargo Bank have present the defense that the Home Owners' Loan Act ("HOLA") protects them from all Laws of the State of California for all acts that they have performed in this loan and actions against this elderly couple. The loan in question is a famous pick-a-pay loan utilized on unsuspecting borrowers to obtain outrageous fees for the brokers that secured these loans and where a certainty to the lending institution that the institution would end up owning the property for a small fraction of its true value.

These Defendants actions have not been shielded by HOLA, which is nothing more than a regulatory act authorizing the Office of Thrift Supervision to supervise the actions of these institutions, which are covered by their Act. There is **NOTHING IN THE ACT THAT TOTALLY PREEMPTS** State Laws, which protects these institutions from California Civil Law violations. The only provision within this act, 12 U.S.C. 1463 (g), which preempts any state laws, is the preemption of the State's Usury Law. The provisions of this section however create of a formula using both the Act and the California Constitution to determine what is a usurious loan. Under that provision (1463(g)) Federally Charted S&L's can charge One percent (1%) over the discount rate for 90-day commercial paper or the amount <u>allowed by the state usury laws (the California Constitution in this situation),</u> which ever is greater. Since the loan before this court was created on December 30, 2007, the 90-day discount rate was a little over 4%. Therefore, World S&L could charge a little over 5% or the amount allowed by the California

Constitution of 7%.  As this loan is for more than 8% the loan is usurious on its face.

Likewise, Plaintiffs in this case could sue under 12 U.S.C. 1463(g) "If such greater rate of interest has been paid, the person who paid it may recover, in a civil action commenced in a **court of appropriate jurisdiction** not later than 2 years after the date of such payment, an amount equal to twice the amount of the interest paid from the savings association taking or receiving such interest."  Therefore, Plaintiffs had a right to bring their action in the California Superior Court, as there was no federal issue in this case.  In the case of ARMANDO IBARRA v. LOAN CITY, No. 09-CV-02228-IEG (POR):  The Court held on the issue of preemption:

*12 C.F.R. § 560.2(a) (2009). "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." Silvas, 514 F.3d at 1005 (quoting Bank of Am. v. City & County of S.F., 309 F.3d 551, 558 (9th Cir. 2002). Section 560.2(b) goes on to provide a list of the types of state laws that are preempted, including laws imposing requirements relating to:*

*(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;*

*(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;*

*(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;*

*(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.*

*Id. § 560.2(b). <u>Section 560.2(c) further provides that other types of state laws are not preempted, "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of [the regulation]" - for example, state contract, commercial, real property, and tort law. Id. § 560.2(c)</u>. With these two provisions in mind, the OTS has set forth a three-step preemption analysis to determine whether a state law is preempted:*

*When analyzing the status of state laws under § 560.2, the first step*

*will be to determine whether the type of law in question is listed in*

*paragraph (b). If so, the analysis will end there; the law is preempted.*

*If the law is not covered by paragraph (b), the next question is whether*

*the law affects lending. If it does, then, in accordance with paragraph*

*(a), the presumption arises that the law is preempted. This*

*presumption can be reversed only if the law can clearly be shown to fit*

*within the confines of paragraph (c) [providing that state laws of*

*general applicability only incidentally affecting federal savings*

*associations are not preempted]. For these purposes, paragraph (c) is*

*intended to be interpreted narrowly. Any doubt should be resolved in*

*favor of preemption.*


*Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg.*

*50951, 50966-67 (Sept. 30, 1996)). Courts should look to the "as-*

*applied" effect of the state law to determine if it a type of law*

*contemplated in the list under Section 560.2(b). Id. at 1006.*

The issues before this court in the form of Cause of Action are not issues with regulatory rights and who controls, but rather issue dealing with wrongful acts committed by individuals posing as loan brokers and ratified by World Savings in its hast to be acquired by Wachovia Mortgage.  None of the acts and Causes of Action should be preempted by this Court or by HOLA because the State is not

attempting to regulate the S&L's business, but rather to correct and remedy the wrongs inflicted upon the Plaintiffs.

Turning to Plaintiffs' Complaint and Defendants arguments:

### FIRST CAUSE OF ACTION

Defendants' first argument is that Plaintiffs have not tendered payment under the code and therefore are not entitled to relief for Rescission. While Plaintiff's filed this matter under the State Law, it is charging Defendants for violation of Federal TILA and the right to rescind under those laws.

On September 20, 2010, attorney Craig Boucher sent a letter to Wachovia Mortgage covering a number of different issues including, but not limited to: offering to tender payment if the bank so requested; violation of truth and lending; unlicensed brokers; the bank's failure to give an appropriate accounting after demand was made in an earlier letter; predatory lending, fraud & breach of fiduciary duty; illegal foreclosure and request for rescission. In the case of GERASTA v. HIBERNIA NATIONAL BANK, 575 F.2d 580 (5th Cir. 1978), the Court held that the homeowner had given notice of rescission pursuant to 15 U.S.C. § 1635(b) and that the bank had 10-days in which to perform certain duties, including withdrawal of the security agreement of record. The bank did nothing, however, and the owners thereafter sued the bank. The court went on to hold that the bank having done nothing, the owner did not have to tender return of the principal of the loan until these acts had been performed by the bank, and then the owner would have a reasonable time in which to return the principal. The court went on to explain its decision as follows:

> *"This court has recognized that the Truth in Lending Act (TILA) provides "detailed remedial machinery" to redress violations*

*of the Act. Sosa v. Fite, 498 F.2d 114, 117 (5th Cir. 1974). Therefore, courts should apply those remedies provided in the Act. Burgess v. Charlottesville Savings and Loan Association, 477 F.2d 40, 45 (4th Cir. 1973); Jordan v. Montgomery Ward & Co., 442 F.2d 78, 81-82 (8th Cir.), cert. denied, 404 U.S. 870, 92 S.Ct. 78, 30 L.Ed.2d 114 (1971). Section 1635 does not expressly provide a remedy for the situation in which the creditor fails to take any action upon receipt of a rescission notice and the consumer does not tender the creditor's property. Section 1640(a), [2] however, provides the remedy for a creditor's failure to comply with "any requirement" imposed by certain provisions of the Act, including § 1635."*

*"Section 1635 and § 1640 are not mutually exclusive remedies; a consumer may be entitled to both rescission pursuant to § 1635 and damages pursuant to § 1640. See Mourning v. Family Publications Service, Inc., 411 U.S. 356, 376, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); Sellers v. Wollman, 510 F.2d 119, 123 (5th Cir. 1975). That Congress intended the § 1640 liability provision to apply to creditors' violations of § 1635 is confirmed by the 1974 amendment of § 1640. Before amendment, § 1640(a) provided that it applied only when a creditor failed "to disclose to any person any information required*

under this part to be disclosed to that person . . . ." As stated, § 1640 now expressly applies whenever a creditor fails to comply with "any requirement" imposed by certain provisions of the Act, including § 1635. Although the amended version of § 1640 did not become effective until after the present cause of action arose, the amended version of § 1640 [Page 584] is applicable to the case on appeal. Mirabal v. General Motors Acceptance Corp., 537 F.2d 871, 875-76 (7th Cir. 1976). See also Gore v. Turner, 563 F.2d 159, 163 (5th Cir. 1977)."

"Section 1640 does not provide for forfeiture of the creditor's property. It provides in relevant part for an award of actual damages, a reasonable attorney's fee, and twice the amount of any finance charge in an amount up to $1,000 and not less than $100. Application of § 1640 thus serves the congressional purpose of restoring the parties to the status quo ante and is consistent with the Act's remedial character. Murphy v. Household Finance Corp., 560 F.2d 206, 208-11 (6th Cir. 1977); Binnick v. Avco Financial Services of Nebraska, Inc., 435 F.Supp. 359, 364-66 (D.Neb.1977); Porter v. Household Finance Corp. of Columbus, 385 F.Supp. 336, 340-43 (S.D. Ohio 1974). If, after a hearing, the court determines that the consumer is

*entitled to rescind, the consumer will be recompensed for any*

*additional damages and costs he has incurred as a result of the*

*litigation."*

Therefore, it is Plaintiffs' position that until Defendants herein recognizes their notice of rescission that they are under no affirmative duty to make a tender.  If the court believes that this section is unclear, Plaintiffs request the right to amended their pleadings.  A proposed First Amended Complaint (FAC) is attached hereto and incorporated herein by this reference.  Under the new FAC, this First Cause of Action has been changed to allege rescission under TILA and Sections 15 U.S.C. 1635 and 1640.

**SECOND CAUSE OF ACTION**

Defendants take the position that the Plaintiffs are not entitled to any accounting of the money that these Defendants claim is now due and owing.  The Plaintiffs' Second Cause of Action is for Declaratory Relief, not the action for an accounting from a fiduciary.  Plaintiffs believe that they have been over charged by the Defendants/moving parties.  Defendants refuse to tell them how much they have calculated as being owing on the Plaintiffs loan, which makes it impossible for the Plaintiffs to obtain refinancing of the property.

We are dealing with a pick-a-pay loan that recalculates every 30-days.  The bank has given three different balance amounts to three different parties [a credit reporting company, the Trustee, and the Plaintiffs].  It is impossible to know which number is true and correct without an accounting AND THE MONTHLY CALCULATIONS AS TO HOW MUCH WAS ADDED TO PRINCIPAL THAT MONTH.  The bank has given Mr. Boucher a payment history, but no accounting on how the loan increased by nearly $100,000 in less than three (3) years.  The bank argues that it owes no duty to the borrower to account for the balance

demanded by the bank.  But if that is true, how do we know the bank is not making up numbers out of the thin air?  This is not a State Action but rather an action against a lender failing to and refusing to account how it has calculated its numbers.  If the court believes that this section is unclear, Plaintiffs request the right to amended their pleadings.

### THIRD CAUSE OF ACTION

Defendants argue that since the loan was created by World Savings it is exempt under the California Constitution.  However, World was not the originator of this loan.  It was originated by a group of loan brokers Roy McGovern, RM Sterling Corporation and others, who turned out to be unlicensed by the State of California as of the date of the loan.  Their licenses had lapsed in June 2007, while they negotiated the loan in December 2007.  World Savings knew that the brokers were unlicensed at the time, because they paid another broker totally unrelated to this loan a $27,000+ fee; so that World could close the loan the day before it was acquired by Wachovia Mortgage.  If World was the originator of the loan, they would not have paid $27,000+ to a broker for the loan.

Defendants also claim that HOLA preempts the California Constitution on Usury.  As explained in the prior section, 12 U.S.C. 1463(g) Federally Charted S&L's can charge One percent (1%) over the discount rate for 90-day commercial paper or the amount allowed by the state usury laws (the California Constitution in this situation), which ever is greater.  Since the loan before this court was created on December 30, 2007, the 90-day discount rate was a little over 4%.  Therefore, World S&L could charge a little over 5%.  CLEARLY §1463(g) DOES NOT ALLOW A LOAN OF 8+% UNDER THE FORMULA.  Likewise, the California Constitution only allows 7%.  Thus this loan is for more than 8% the loan is usurious on its face.

California Constitution Article XV. USURY – Sec. 2 –

> *The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest:*

> *In the case of WRI Opportunity Loans II, LLC v. Cooper, 154 Cal.App.4th 525, the court held the maximum rate of interest is 7 percent ... (Cal. Const., art. XV, § 1, subds. (1)-(2).)"[4] (Jones v. Wells Fargo Bank (2003) 112 Cal.App.4th 1527, 1534-1535 [5 Cal.Rptr.3d 835] (Jones).) To be usurious, a contract "must in its inception require a payment of usury;" subsequent events do not render a legal contract usurious. (Sharp v. Mortgage Security Corp. (1932) 215 Cal. 287, 290 [9 P.2d 819]; see Strike v. Trans-West Discount Corp. (1979) 92 Cal.App.3d 735, 745 [155 Cal.Rptr. 132].) The essential elements of a claim of usury are: "(1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction. [Citations.]" (Ghirardo v. Antonioli, supra, 8 Cal.4th at p. 798.)*

*If the court finds that the loan is usurious then the contract will be*

*considered illegal and unenforceable. WRI Opportunity Loans II,*

*LLC v. Cooper, id page 542. Martin v. Ajax Construction Co., supra,*

*124 Cal.App.2d at p. 431; see § 1667; 1 Witkin, Summary of Cal. Law*

*(10th ed. 2005) Contracts, § 455, pp. 497-98.) As Witkin explains, as*

*a general rule, "[b]ecause an illegal contract is void, it cannot be*

*ratified by any subsequent act, and no person can be estopped to deny*

*its validity. [Citations.] [¶] Similarly, the defense of illegality cannot*

*be waived by stipulation in the contract. [Citations.]"*

Here there is no question that the loan is usurious because it exceeds 8%. Under 12 U.S.C. 1463(g) the loan could not exceed either 5% or under the California Constitution exceed 7%. Since the loan is for 8%, it is usurious on its face. If the court believes that this section is unclear, Plaintiffs request the right to amended their pleadings. A proposed First Amended Complaint (FAC) is attached hereto and incorporated herein by this reference. Pursuant to that FAC this Cause of Action has been changed to allege a violation of 12 U.S.C. 1463(g).

**FIFTH CAUSE OF ACTION**

Defendants claim that HOLA prohibits an action against them for Elder Abuse. This is totally a false position. In the case of ZIMMER v. NAWABI, 566 F.Supp.2d 1025 (E.D.Cal. 2008). The District Court held:

*"To utilize the Elder Abuse Act's enhanced remedies, a plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse." Id. § 15657.5(b); [13] see also id. § 15657.5(a) (preponderance of the Page 1034 evidence standard governs a plaintiff's ability to recover "all other remedies otherwise provided by law" and reasonable attorney's fees and costs associated with the financial elder abuse claim)."*

*"With respect to plaintiff's refinance, Golden State Financial Corporation received $10,700.00 in fees, which it wrongfully obtained as a result of Nawabi's false statements about the terms of plaintiff's refinance, which it knew were less favorable to plaintiff than her previous mortgage. See Toscano v. Ameriquest Mortgage Co., No. 07-0957, 2007 WL 3125023, at \*6 (E.D.Cal. Oct. 24, 2007) (holding that an elder abuse claim based on defendant's misrepresentations about the terms of plaintiff's loans is "'financial in nature'") (citation omitted). Therefore, Golden State is liable under subsection 15610.30(a)(1). Cal. Welf. & Inst.Code § 15610.30(a)(1)-(2)."*

In the case before this court the Plaintiffs were 74 at the time, on a fixed pension, pressured by the brokers, World Savings knew that the brokers were unlicensed at the time, that there were no proper disclosures concerning this loan and that the brokers were being paid over $27,000+ in commissions to unlicensed brokers. This is the clearest case of elder abuse that can be alleged against these pirates. And World Savings knew and ratified all of the actions of the unlicensed brokers so that they could make the loan immediately before the company was sold to Wachovia Mortgage. A proposed First Amended Complaint is attached hereto and incorporated herein by this reference. Pursuant to that FAC, Defendants Wells Fargo, Wachovia and World are not part of this Fifth Cause of Action.

## MEMORANDUM OF POINTS AND AUTHORITIES

*The Defendant's Motion relies on the Federal Rules of Civil Procedure Rule 12. A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). In resolving a 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-338 (9th Cir. 1996).*

*The threshold is "exceedingly low" for a complaint to survive a*

*motion to dismiss for failure to state a claim. DIRECTV, Inc. v. Cope,*

*301 F. Supp. 2d 1303, 1304 (M.D. Ala. 2003). To avoid a Rule*

*12(b)(6) dismissal, a complaint need not contain detailed factual*

*allegations, rather, it must plead "enough facts to state a claim to*

*relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550*

*U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has*

*facial plausibility when the pleaded factual content allows the court to*

*draw the reasonable inference that the defendant is liable for the*

*misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (U.S.*

*2009).*

Based upon the forgoing, Plaintiffs believe that they have placed these

Defendants on sufficient notice of the claims against them and that the Motion to

Dismiss should be Denied.  If the court believes that any section of the complaint

is unclear, Plaintiffs request the right to amended their pleadings.

DATED:      December 30, 2010                    THE DURST FIRM

                                                 /s/ Lee H. Durst

                                  BY _____

                                        Lee H. Durst

1
2
3
4
5
6
7
8
9                    PROPOSED FIRST AMENDED COMPLAINT
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Lee H. Durst, Esq., SBN 69704
   The Durst Firm
2  220 Newport Center Drive, Ste. 11285
   Newport Beach, CA 92660
3  Tel:  (949) 400-5068; Fax:  (714) 242-2096
   Email:  lee.durst@gmail.com
4
   Craig L. Boucher, Esq. SBN 70230
5  P.O. Box 120319
   Big Bear Lake, CA 92315-8911
6  714-746-5092
   Email: craigboucher@charter.net
7
   LARRY ROTHMAN & ASSOCIATES
8  LARRY ROTHMAN – SBN 72451
   City Plaza
9  1 City Boulevard West, Suite 850
   Orange, California 92868
10 (714) 363 0220  Telephone
   (714) 363 0229  Facsimile
11 Email: tocollect@aol.com

12 Attorneys for Plaintiffs

13

14             *UNITED STATES DISTRICT COURT*

15            *CENTRAL DISTRICT OF CALIFORNIA*

16                  *SOUTHERN DIVISION*

17

18 | Lansing E. Eberling and Lura J. Eberling, | Case No.: 8:10-cv-01831-AG – RNB |
   |---|---|
19 | Plaintiffs, | [Assigned to the Honorable Andrew J. Guilford, Courtroom 10-D] |
20 | vs. | |
21 | R.M. Sterling Mortgage Services, Inc., a | [PROPOSED] |
22 | California corporation; John Alvin Bohl, III; an individual; Roy McGovern, an | FIRST AMENDED COMPLAINT FOR: |
23 | individual; Wells Fargo Bank N.A.; a | |
24 | United States Corporation; Wachovia | 1.  RESCISSION - 15 U.S.C. § 1635and 15 U.S.C. § 1640 |
25 | Mortgage Corporation, a North Carolina | 2.  DECLARATORY RELIEF |
26 | Corporation; World Savings and Loan | 3.  DECLARATORY RELIEF |
27 | Association, and DOES 1 TO 100, | 4.  12 U.S.C 1463 |
28 | | 5.  VIOLATION OF SECTION BUSINESS & PROFESSIONS |

| | |
|---|---|
| Inclusive, | CODE § 17200 *et seq.* |
|           Defendants. | 6.  ELDER ABUSE, Pursuant to Welf. & Inst. Code, § 15610.30. |
| | 7.  BREACH OF FIDUCIARY DUTIES |
| | 8.  RICO |
| | DEMAND FOR JURY TRIAL |

Plaintiff alleges as follows:

GENERAL ALLEGATIONS

1.  Plaintiffs are and, at all times relevant herein, were residents of Orange County, California.  Plaintiffs are senior citizens, above the age sixty-five (65).

2.  Plaintiffs allege that Defendant R. M. Sterling Mortgage Services, Inc., (hereinafter referred to as "Sterling") is a California corporation authorized to do business in the State of California.  Additionally, Plaintiffs allege that John Alvin Bohl, III was the designated broker for Sterling is licensed with the California Department of Real Estate. Plaintiffs allege that Sterling was NOT licensed to negotiate loans as of December 2007 as its license had expired as on June 25, 2007. Plaintiff further alleges that Roy McGovern was the owner of Sterling, but did not hold a real estate brokers license in his own name. McGovern negotiated all the terms and condition of Plaintiffs loan, a violation of California real estate law.  Plaintiff alleges that Sterling is presently suspended as a California corporation.  A copy of the DRE report on the property on the company showing that its license expired on June 25, 2007 is attached hereto and incorporated herein by this reference as Exhibit 1.

3.  Plaintiffs allege that John Alvin Bohl III has been involved as the designated broker for numerous loan companies, all of which have ended up either dissolved or suspended.

4.    In early December 2007 Mickey Singh with American Express referred Mr. Eberling to Sterling Mortgage Services, stating that Sterling had a relationship with a lender whereby they had a program that had been of assistance to other American Express customers with similar financial problems as that of the Eberlings.

5.    Prior to December 7, 2007, Mr. Eberling (then age 74 years) had personal expenses which been paid by an American Express Card, in the approximate principal amount of $238,000.

6.    At the same time, the Eberlings had a loan, secured by their home, with a balance of about $546,000 and an interest rate of 5% and fully amortized monthly payments of $2,275. They also had miscellaneous other credit balances totaling about $20,000.

7.    On said December 7, 2007 Roy McGovern, owner of R.M. Sterling Mortgage Services, Inc. solicited a commitment from the Eberlings to refinance their home for $830,000. Mr. McGovern was in direct contact with an employee of American Express, Mickey Singh (with American Express' collection agency, referred to as "Total Credit Recovery").  Mr. McGovern knew Mr. Eberling's age and his terrible financial condition, and made documented efforts to coerce Mr. Eberling to engage Mr. McGovern to obtain a new loan.

8.  On the following Monday, December 10, 2007 Mr. Eberling and his wife signed all documents presented to them by Mr. McGovern, including an inaccurate and incomplete Good Faith Estimate ("GFE") and a Loan Application containing a material misstatement of their income. Their income had been stated in writing to Mr. McGovern as $7,792 per month. Mr. McGovern filled out the Loan Application stating their income to be $14,000 per month.  When asked, Mr. McGovern said that the application must state that amount in order to get the loan approved. He also advised Mr. Eberling that if he did not cooperate, Mr. McGovern would contact Mr. Singh and American Express would file litigation, attach all bank accounts and force Mr. Eberling into bankruptcy, immediately.

9.  During the processing of the loan application the loan was increased by $15,000; partially enabling the loan fees to be increased $25,520 to a total of $27,462, an amount way above industry standards, and substantially in excess of the original amount shown on the first GFE ($3,112.50). These fees were entirely funded from the loan proceeds. This amount of fees and the rate charged represents a usurious loan under Article XV of the California Constitution and Federal Banking laws.

10. On Wednesday, December 12, 2007, the appraisal, loan documents and disclosures were prepared and delivered. The loan product was the now notorious "Pick-A-Pay" World Savings Loan, currently under investigation by the Attorneys General of Arizona, Colorado, Florida, Illinois, Nevada, New Jersey, Texas and Washington State for failures to make full disclosures to borrowers of the consequences of the negative amortization, compounding of interest on interest and the effect on the loan balance.

11. On December 20, 2007 the Note to World Savings and Loan Association ("World Savings") and other documents were signed and returned. Numerous document were never delivered to Plaintiffs at closing.

12. The final settlement occurred on December 31, 2007. From beginning to end was 24 days!

13. Mr. and Mrs. Eberling are burdened by a loan which they had not had time to think about. They had no time to consult professional advisors or family members. World Savings had sold a loan with a 3-year prepayment penalty and an annual reset to an elderly couple that now faces foreclosure of the home they have lived in for the past 40 years.

14.  The day after the loan was made, World Savings was merged with Wachovia Mortgage.

15.  Wachovia was then merged with Wells Fargo Bank.

16.  Wells Fargo now claims that the loan amount is no longer $845,000.00, which it was in December 2007 when the loan was made, but rather $928,645.63. The loan made by World Savings is exactly the same loan that Wells Fargo is being investigated for by the Attorneys General for the States of Arizona, Colorado, Florida, Illinois, Nevada, New Jersey, Texas and Washington State and has agreed to pay to those states $24,000,000 to stop those probes. Additionally, Wells Fargo has agreed to pay $770 million to the borrowers in Arizona, Colorado, Florida, Illinois, Nevada, New Jersey, Texas and Washington State. Copies of the news stories about the payments are attached hereto and incorporated herein by this reference as Exhibit 2.

17.  Wells Fargo Bank was notified by Attorney Craig Boucher that the Plaintiffs were contesting the validity of the loan and its amount in a letter texted to Wells Fargo Foreclosure department NDEx West LLC on August 8, 2010.  Wells Fargo has communicated with Mr. Boucher, but their response was totally insufficient to answer any of

the questions that Mr. Boucher asked.  No accounting of the loan has been made pursuant to that demand.

FIRST COUNT

FOR RESCISSION –

VIOLATION OF TRUTH IN LENDING ACT (TILA)

15 U.S.C. § 1635and 15 U.S.C. § 1640

[AGAINST ALL DEFENDANTS]

18.    Plaintiffs re-allege each and every allegation contained in paragraphs 1 through 17, inclusive.

19.    Plaintiffs entered into this outrageous loan because McGovern and Singh coerced them into it through threats and economic duress.

20.    The loan should be rescinded by the court due to the outrageous conduct of the lenders and their duress of the Plaintiffs.  Additionally, these Defendants did not explain or give proper written explanation of the loans as required under TILA.  Plaintiffs have given written notice of rescissions to Wells Fargo & Wachovia on September 20, 2010, along with a list of other violations of the law, which were Plaintiffs' grounds for rescinding.  However, Wells Fargo and Wachovia have decided to remain silent and they have not complied with their statutory duties under that section of the law.

21.    Plaintiffs request the Court enter an order rescinding the subject loan executed by the Plaintiffs and recorded on their property on December 31, 2007.

SECOND COUNT

FOR DECLARATORY RELIEF

[Against Defendants WELLS FARGO and WACHOVIA only]

22.   Plaintiff re-alleges each and every allegation contained in paragraphs 1 through 17, inclusive.

23.   An actual controversy has arisen between Plaintiffs, Wachovia and Wells Fargo.

24.   Plaintiffs contend that the amount that Wachovia and Wells Fargo shows as owing is not correct and that Wells Fargo has not credited all payments made by Plaintiffs to it over the last two and one-half years. Plaintiffs' original balance on the loan was $845,000.00.   Wachovia and Wells Fargo now claim the amount owing is $928,645.63.   They have also reported different amounts to the credit reporting companies and to other third parties.   Plaintiffs are attempting to acquire new financing, but cannot do so because they cannot tell the new lenders the amount of the pay-off of the Wachovia Loan.

25.   Plaintiffs do not have a speedy remedy at law.

26.   Plaintiffs desire to have a judicial determination of their rights and duties.

THIRD COUNT

FOR DECLARATORY RELIEF

[Against All Defendants]

27.   Plaintiff re-alleges each and every allegation contained in paragraphs 1 through 26, inclusive.

28.     An actual controversy has arisen between Plaintiffs, Wachovia and Wells Fargo.

29.     Plaintiffs contend that the amount of interest being charged on the loan the interest rate charged by World Savings, Wachovia and Wells Fargo (8+%) exceeds the Amount allowed under 12 U.S.C. 1463(g) which set a limit of 1% over the 90-day discount rate as of the date of the loan (which was a little over 4% making a total of a little over 5%) or Article XV of the California Constitution limiting interest on loans to 7%.

30.     Plaintiffs do not have a speedy remedy at law.

31.     Plaintiffs desire to have a judicial determination of their rights and duties.

## FOURTH COUNT

## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200

[Against Defendants, Sterling, McGovern, Bohl and Does 1 to 100, only]

32.     Plaintiffs re-allege each and every allegation contained in paragraphs 1 through 31, inclusive.

33.     Plaintiffs were mislead and coerced into entering to the subject loan by threats from McGovern, American Express Credit Card Company, Bohl and Sterling. The actions by McGovern, American Express Credit Card Company, Bohl and Sterling are a direct violation to the Fair Debt Collection Act.   These Defendants actions also violate

common law /state-federal banking laws under Mini FTC act (15 USC 45).

34. McGovern and Sterling were required by California law to have a license as a broker to negotiate a loan for a mortgage on property.

35. McGovern and Sterling held themselves out as having the proper licenses to provide this service to the Plaintiffs.

36. Sterling's license to provide real estate services expired on June 25, 2007 and had not been renewed as of December 2007. However, Sterling and McGovern (who has never been licensed by the Department of Real Estate "DRE") were still doing loans in December 2007 when they obtained Plaintiffs loan.

37. Sterling also changed the loan application and the loan was increased by $15,000; partially enabling the loan fees to be increased $25,520 to a total of $27,462, an amount way above industry standards, and the original amount shown on the first Good Faith Estimate of loan costs "GFE" of $3,112.50. The fees were entirely funded from the loan proceeds. Because there was no broker for this corporation, no loan fees could be charged by this company.

38. Sterling, McGovern and Bohl placed Plaintiffs into a loan that they knew they were not qualified for and that they could not possible continue paying on. This action by these individuals and this corporation was to obtain fraudulent fees and to help American Express obtain payment in full on the debt owed by Plaintiffs. Additionally, Sterling, McGovern and Bohl knew that World Savings was being taken over by Wachovia and that it was not checking any

documentation and was making loans so that the individuals at World Savings could make money immediate before the company was being taken over by Wachovia.  Finally, these defendants did not properly prepare truth-in-lending documents and proper disclosures to the Plaintiffs.  They did not explain the nature and type of loan that they were putting Plaintiffs into as required by both Federal and State Statutes.

39.   B&P code § 17200 provides:

"As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

40.   Plaintiff has been damaged in an unknown amount, but said amount exceeds more than One Million Five Hundred Thousand Dollars [$1,500,000.]  Plaintiff will seek to amend this pleading at time of trial pursuant to proof offered at trial.

//

## FIFTH COUNT

### ELDER ABUSE, Pursuant to Welf. & Inst. Code, § 15610.30.

### [Against Defendants, Sterling, McGovern, Bohl and Does 1 to 100, only]

41.  Plaintiff re-alleges each and every allegation contained in paragraphs 1 through 40, inclusive.

42.  Bohl, Sterling and McGovern took, appropriated and retained plaintiff's property, illegal fees and costs for the "loan."

43.  The action of these Defendants have caused the Plaintiffs to totally deplete their life savings and 401k savings and they assisted in taking, appropriating or retaining plaintiff's property;

44.  That Plaintiffs are in their 70's at the time of the conduct;

45.  These Defendants have harmed Plaintiffs.

46.  Defendants' actions are so heinous and egregious that Plaintiff should be awarded punitive damages to make an example of them.

## SIXTH COUNT

### BREACH OF FIDUCIARY DUTIES

### AGAINST BOHL, STERLING, & MC GOVERN

47.  Plaintiffs re-allege each and every allegation contained in paragraphs 1 – 43, inclusive.

48.  Defendants BOHL, STERLING, & MC GOVERN all owed a fiduciary duty as realty agents/brokers and/or alleged brokers/agents for Plaintiffs.

49.  Defendants BOHL, STERLING, & MC GOVERN breached their duties to Plaintiffs by putting Plaintiffs into a very bad loan, so that they could collect a $27,462 in fees, which were also outrageous.

50.  Defendants BOHL, STERLING, & MC GOVERN damaged Plaintiffs as a direct violation of their fiduciary duty.

51.   These Defendants have harmed Plaintiffs.

52.   Defendants' actions are so heinous and egregious that Plaintiff should be awarded punitive damages to make an example of them.

SEVENTH COUNT

Violations of 18 U.S.C.  § 1962 of RICO

Against Defendants BOHL, STERLING, & MC GOVERN AND ALL DOES 1 TO 100

53.   Plaintiffs seek damages/relief for violations of 18 U.S.C. section 1962.   This claim targets the criminal enterprise erected by Defendants for the illicit purpose of committing bank fraud through the setting up of false and fraudulent loans to U.S. Banks.  Mickey Singh and McGovern used threats of financial extortion to make the Plaintiffs agree to entering into this outrageous loan for Defendants' personal financial gains.  It is this fraudulent activities that was one of the major factors in the U.S. Economic and Financial meltdown. These Defendants were creating loans that they knew, because of the ages of their victims, that the loans would never be repaid and that the lenders would be writing off big losses or obtaining the collateral properties for a small portion of the real value of the properties.

54.   Plaintiffs incorporate and adopt, as if fully set forth here, the preceding paragraphs of this complaint:  1-53.

55.   This claim for relief arises under § 1962 (a) and (d) of RICO and is asserted against the Defendants set forth above for this Cause of Action.

56.   Each plaintiff is a "person," as that term is defined in §1961 (3) of

RICO.

57.    Each defendant is a "person," as that term is defined in §1961 (3) of RICO.

58.    At all times relevant to the events and wrongful conduct alleged herein, each of the Defendants was associated with the association-in-fact enterprise which was engaged in and the activities of which affected intra and interstate commerce – the purpose of which was to further the goals of the enterprise.  Interstate Commerce can be shown as a violation of the mails and wire services which, when used to defraud someone, is considered Interstate commerce.

59.    As alleged above, defendants have committed and/or aided and abetted a pattern of criminal acts including but not limited to multiple acts of:

a.  Mail fraud, in violation of 18 U.S.C. § 1341 and/or wire fraud, in violation of 18 U.S.C. 1343.   Each of the defendants engaged in multiple acts of mail fraud through their implementation of various components of their fraud.  Each of the various asset transfers and transactions described herein were effectuated through the exchange of information and documents utilizing the U.S. mail, as well as other methods of interstate communication.

60.    (1) Acts of mail fraud and wire fraud include the following:    (1) fraudulently obtaining Plaintiffs signatures on loans which were never properly explained to them; no proper truth in lending disclosures; violating the Fair Debt Collection Act; Elder Abuse, and conveyance of Plaintiff's assets to the Lenders as collateral for a loan that these Lenders and Defendants knew could never be repaid by these Plaintiffs.

61.   Plaintiff is informed and believes, and based upon that information and belief, alleges that the criminal conspiracy performed by these Defendant could not have occurred without the Defendant's using the US mail and US bank wiring system.   The use of banks for this conspiracy is also banking fraud, which is also an element of RICO.

62.   Plaintiffs are informed and believe, and based upon that information and belief, allege that these Defendants have been running this scam for Mickey Sigh, American Express, McGovern, Bohl and Sterling for a number of years and have had numerous victims.

63.   These Defendants targeted plaintiffs because of their ages.   Plaintiffs are senior citizens and as such, the theft of their property constitutes a financial elder abuse by these Defendants in direct violation of Penal Code § 368, subdivision (d) and grand theft by false pretenses in violation of section 484 and section 487, subdivision (a).

64.   Each of the foregoing wrongful acts constitutes "racketeering activity," as that term is defined in § 1961(1) of RICO.    Each one of the defendants agreed and conspired with other defendants and others to commit the above-referenced predicate acts of racketeering activity and to violate § 1962(a) and (d) of RICO.

65.   In violation of §1962 (a) and (d) of RICO, Defendants conspired to derive and did derive substantial proceeds through the above-referenced pattern of racketeering activity and conspired to use or invest and used or invested such proceeds in the operations of the association-in-fact enterprise of Defendants.

66.   As a direct and proximate result of defendants' violations of §1962 (a) and (d) of RICO, Plaintiffs have been injured by the loss of the assets   that were looted, thereby depriving the plaintiffs of the rights

and benefits due them.  Under the provisions of §1964 (c) of Plaintiffs are entitled to treble damages, the costs of bringing this suit and attorneys' fees.

WHEREFORE, Plaintiff prays for judgment as follows:

### FIRST COUNT

1.   For an Order of the Court rescinding the loan with Defendants, recorded on December 31, 2007.

### SECOND & THIRD COUNTS

2.   For a declaration of the rights and duties of the parties, determining the amount of the true balance of the present loan.

3.   For a declaration of the rights and duties of the parties, declaring that the loan is usurious and cancelling the loan as a matter of law.

4.   For an Accounting of the history of the loan and all loan payments.

5.   For a preliminary and permanent injunction.

### FOURTH COUNT

6.   General Damages according to proof., but not less than $1,500,000.

7.   Special Damages according to proof.

### FIFTH COUNT

8.   General Damages according to proof.

9.   Special Damages according to proof.

10.   Punitive Damages according to proof.

### SIXTH COUNT

11.   General Damages according to proof.

12.   Special Damages according to proof.

13.   Punitive Damages according to proof

SEVENTH COUNT

14.   General Damages according to proof.

15.   Special Damages according to proof.

16.   Treble Damages according to proof.

17.   Attorneys' Fees.


Dated: December 30, 2010                    Law Offices of Craig Boucher
                                            And THE DURST FIRM


                                            /s/ Lee H. Durst

                                      By _____

                                            Lee H. Durst
                                            Attorneys for Plaintiffs

**PROOF OF SERVICE**
State of California, County of Orange:

I am employed in the county and state aforesaid.  I am over the age of 18 and not a party to the within action; my business address is:  1 City Boulevard West, Suite 850, Orange, California 92868

On December 30, 2010, I served the foregoing document described as:

**<u>OPPOSITION TO MOTION TO DISMISS AND</u>**

**<u>PROPOSED FIRST AMENDED COMPLAINT</u>**

on the parties listed below in this action by placing a true copy thereof or the originals via electronic mail through the ECF system of the United States District Court to the following

COUNSEL FOR DEFENDANTS
Douglas G. Matsui, Esq. dmatsui@afrct.com
Jeremy E. Shulman, Esq. jshulman@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP
199 S. Los Robles Avenue, Suite 600 Pasadena, California 91101-2459 Tel: (626) 535-1900; Fax: (626) 577-7764

**[X]**          **BY ELECTRONIC MAIL.**  I caused the above document to be electronically mailed through the ECF system of the United States District Court.  Executed on December 30, 2010, at Orange California.


**[X]**          **FEDERAL.**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

          I declare under penalty of perjury under the laws of United States and the State of California that the above is true and correct.

S/LARRY ROTHMAN

_____

LARRY ROTHMAN