Lee H. Durst, Esq., SBN 69704
The Durst Firm
220 Newport Center Drive, Ste. 11285
Newport Beach, CA 92660
Tel:  (949) 400-5068; Fax:  (714) 242-2096
Email:  lee.durst@gmail.com

Craig L. Boucher, Esq. SBN 70230
P.O. Box 120319
Big Bear Lake, CA 92315-8911
714-746-5092
Email: craigboucher@charter.net

LARRY ROTHMAN & ASSOCIATES
LARRY ROTHMAN – SBN 72451
City Plaza
1 City Boulevard West, Suite 850
Orange, California 92868
(714)  363 0220  Telephone
(714)  363 0229   Facsimile
Email: tocollect@aol.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| Lansing E. Eberling and Lura J. Eberling,<br><br>              Plaintiffs,<br><br>         vs.<br><br>R.M. Sterling Mortgage Services, Inc., a California corporation; John Alvin Bohl, III; an individual; Roy McGovern, an individual; Wells Fargo Bank N.A.; a United States Corporation; Wachovia Mortgage Corporation, a North Carolina | Case No.: 8:10-cv-01831-AG – RNB<br><br>[Assigned to the Honorable Andrew J. Guilford, Courtroom 10-D]<br><br>[PROPOSED]<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>1. RESCISSION - 15 U.S.C. § 1635and 15 U.S.C. § 1640<br>2. DECLARATORY RELIEF<br>3. DECLARATORY RELIEF<br>4. 12 U.S.C 1463<br>5. VIOLATION OF SECTION BUSINESS & |

| | |
|---|---|
| Corporation; World Savings and Loan Association, and DOES 1 TO 100, Inclusive,<br><br>          Defendants. | PROFESSIONS CODE § 17200 *et seq.*<br>6. ELDER ABUSE, Pursuant to Welf. & Inst. Code, § 15610.30.<br>7. BREACH OF FIDUCIARY DUTIES<br>8. RICO<br><br>DEMAND FOR JURY TRIAL |

Plaintiff alleges as follows:

GENERAL ALLEGATIONS

1.    Plaintiffs are and, at all times relevant herein, were residents of Orange County, California.  Plaintiffs are senior citizens, above the age sixty-five (65).

2.    Plaintiffs allege that Defendant R. M. Sterling Mortgage Services, Inc., (hereinafter referred to as "Sterling") is a California corporation authorized to do business in the State of California.  Additionally, Plaintiffs allege that John Alvin Bohl, III was the designated broker for Sterling is licensed with the California Department of Real Estate.   Plaintiffs allege that Sterling was NOT licensed to negotiate loans as of December 2007 as its license had expired as on June 25, 2007.  Plaintiff further alleges that Roy McGovern was the owner of Sterling, but did not hold a real estate brokers license in his own name. McGovern negotiated all the terms and condition of Plaintiffs loan, a violation of California real estate law.  Plaintiff alleges that Sterling is presently suspended as a California corporation. A copy of the DRE report on the property on the company showing that its license expired on June 25, 2007 is attached hereto and incorporated herein by this reference as Exhibit 1.

3.    Plaintiffs allege that John Alvin Bohl III has been involved as the designated broker for numerous loan companies, all of which have ended up either dissolved or suspended.

4.   In early December 2007 Mickey Singh with American Express referred Mr. Eberling to Sterling Mortgage Services, stating that Sterling had a relationship with a lender whereby they had a program that had been of assistance to other American Express customers with similar financial problems as that of the Eberlings.

5.   Prior to December 7, 2007, Mr. Eberling (then age 74 years) had personal expenses which been paid by an American Express Card, in the approximate principal amount of $238,000.

6.   At the same time, the Eberlings had a loan, secured by their home, with a balance of about $546,000 and an interest rate of 5% and fully amortized monthly payments of $2,275. They also had miscellaneous other credit balances totaling about $20,000.

7.   On said December 7, 2007 Roy McGovern, owner of R.M. Sterling Mortgage Services, Inc. solicited a commitment from the Eberlings to refinance their home for $830,000. Mr. McGovern was in direct contact with an employee of American Express, Mickey Singh (with American Express' collection agency, referred to as "Total Credit Recovery").  Mr. McGovern knew Mr. Eberling's age and his terrible financial condition, and

made documented efforts to coerce Mr. Eberling to engage Mr. McGovern to obtain a new loan.

8. On the following Monday, December 10, 2007 Mr. Eberling and his wife signed all documents presented to them by Mr. McGovern, including an inaccurate and incomplete Good Faith Estimate ("GFE") and a Loan Application containing a material misstatement of their income. Their income had been stated in writing to Mr. McGovern as $7,792 per month. Mr. McGovern filled out the Loan Application stating their income to be $14,000 per month.  When asked, Mr. McGovern said that the application must state that amount in order to get the loan approved. He also advised Mr. Eberling that if he did not cooperate, Mr. McGovern would contact Mr. Singh and American Express would file litigation, attach all bank accounts and force Mr. Eberling into bankruptcy, immediately.

9. During the processing of the loan application the loan was increased by $15,000; partially enabling the loan fees to be increased $25,520 to a total of $27,462, an amount way above industry standards, and substantially in excess of the original amount shown on the first GFE ($3,112.50). These fees were

entirely funded from the loan proceeds.  This amount of fees and the rate charged represents a usurious loan under Article XV of the California Constitution and Federal Banking laws.

10.  On Wednesday, December 12, 2007, the appraisal, loan documents and disclosures were prepared and delivered.  The loan product was the now notorious "Pick-A-Pay" World Savings Loan, currently under investigation by the Attorneys General of Arizona, Colorado, Florida, Illinois, Nevada, New Jersey, Texas and Washington State for failures to make full disclosures to borrowers of the consequences of the negative amortization, compounding of interest on interest and the effect on the loan balance.

11.  On December 20, 2007 the Note to World Savings and Loan Association ("World Savings") and other documents were signed and returned.  Numerous document were never delivered to Plaintiffs at closing.

12.  The final settlement occurred on December 31, 2007.  From beginning to end was 24 days!

13.  Mr. and Mrs. Eberling are burdened by a loan which they had not had time to think about. They had no time to consult

professional advisors or family members.  World Savings had sold a loan with a 3-year prepayment penalty and an annual reset to an elderly couple that now faces foreclosure of the home they have lived in for the past 40 years.

14.  The day after the loan was made, World Savings was merged with Wachovia Mortgage.

15.  Wachovia was then merged with Wells Fargo Bank.

16.  Wells Fargo now claims that the loan amount is no longer $845,000.00, which it was in December 2007 when the loan was made, but rather $928,645.63. The loan made by World Savings is exactly the same loan that Wells Fargo is being investigated for by the Attorneys General for the States of Arizona, Colorado, Florida, Illinois, Nevada, New Jersey, Texas and Washington State and has agreed to pay to those states $24,000,000 to stop those probes.  Additionally, Wells Fargo has agreed to pay $770 million to the borrowers in Arizona, Colorado, Florida, Illinois, Nevada, New Jersey, Texas and Washington State. Copies of the news stories about the payments are attached hereto and incorporated herein by this reference as Exhibit 2.

17.    Wells Fargo Bank was notified by Attorney Craig Boucher that the Plaintiffs were contesting the validity of the loan and its amount in a letter texted to Wells Fargo Foreclosure department NDEx West LLC on August 8, 2010.    Wells Fargo has communicated with Mr. Boucher, but their response was totally insufficient to answer any of the questions that Mr. Boucher asked.  No accounting of the loan has been made pursuant to that demand.

## FIRST COUNT
## FOR RESCISSION –
## VIOLATION OF TRUTH IN LENDING ACT (TILA)
## 15 U.S.C. § 1635and 15 U.S.C. § 1640
## [AGAINST ALL DEFENDANTS]

18.    Plaintiffs re-allege each and every allegation contained in paragraphs 1 through 17, inclusive.

19.    Plaintiffs entered into this outrageous loan because McGovern and Singh coerced them into it through threats and economic duress.

20.    The loan should be rescinded by the court due to the outrageous conduct of the lenders and their duress of the Plaintiffs.  Additionally, these Defendants did not explain or give proper written explanation of the loans as required under TILA. Plaintiffs have given written notice of rescissions to Wells Fargo & Wachovia on September 20, 2010, along with a list of other

violations of the law, which were Plaintiffs' grounds for rescinding. However, Wells Fargo and Wachovia have decided to remain silent and they have not complied with their statutory duties under that section of the law.

21.    Plaintiffs request the Court enter an order rescinding the subject loan executed by the Plaintiffs and recorded on their property on December 31, 2007.

## SECOND COUNT
## FOR DECLARATORY RELIEF

[Against Defendants WELLS FARGO and WACHOVIA only]

22.    Plaintiff re-alleges each and every allegation contained in paragraphs 1 through 17, inclusive.

23.   An actual controversy has arisen between Plaintiffs, Wachovia and Wells Fargo.

24.   Plaintiffs contend that the amount that Wachovia and Wells Fargo shows as owing is not correct and that Wells Fargo has not credited all payments made by Plaintiffs to it over the last two and one-half years. Plaintiffs' original balance on the loan was $845,000.00. Wachovia and Wells Fargo now claim the amount owing is $928,645.63. They have also reported different amounts to the credit reporting companies and to other third parties. Plaintiffs are attempting to acquire new financing, but cannot do so because they cannot tell the new lenders the amount of the pay-off of the Wachovia Loan.

25.   Plaintiffs do not have a speedy remedy at law.

26.   Plaintiffs desire to have a judicial determination of their rights and duties.

## THIRD COUNT
## FOR DECLARATORY RELIEF
### [Against All Defendants]

27.   Plaintiff re-alleges each and every allegation contained in paragraphs 1 through 26, inclusive.

28.   An actual controversy has arisen between Plaintiffs, Wachovia and Wells Fargo.

29.   Plaintiffs contend that the amount of interest being charged on the loan the interest rate charged by World Savings, Wachovia and Wells Fargo (8+%) exceeds the Amount allowed under 12 U.S.C. 1463(g) which set a limit of 1% over the 90-day discount rate as of the date of the loan (which was a little over 4% making a total of a little over 5%) or Article XV of the California Constitution limiting interest on loans to 7%.

30.   Plaintiffs do not have a speedy remedy at law.

31.   Plaintiffs desire to have a judicial determination of their rights and duties.

## FOURTH COUNT
## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200

[Against Defendants, Sterling, McGovern, Bohl and Does 1 to 100, only]

32. Plaintiffs re-allege each and every allegation contained in paragraphs 1 through 31, inclusive.

33. Plaintiffs were mislead and coerced into entering to the subject loan by threats from McGovern, American Express Credit Card Company, Bohl and Sterling. The actions by McGovern, American Express Credit Card Company, Bohl and Sterling are a direct violation to the Fair Debt Collection Act. These Defendants actions also violate common law /state-federal banking laws under Mini FTC act (15 USC 45).

34. McGovern and Sterling were required by California law to have a license as a broker to negotiate a loan for a mortgage on property.

35. McGovern and Sterling held themselves out as having the proper licenses to provide this service to the Plaintiffs.

36. Sterling's license to provide real estate services expired on June 25, 2007 and had not been renewed as of December 2007. However, Sterling and McGovern (who has never been licensed by the Department of Real Estate "DRE") were still doing loans in December 2007 when they obtained Plaintiffs loan.

37. Sterling also changed the loan application and the loan was increased by $15,000; partially enabling the loan fees to be increased $25,520 to a total of $27,462, an amount way above industry standards, and the original amount shown on the first Good Faith Estimate of loan costs "GFE" of $3,112.50. The fees

were entirely funded from the loan proceeds. Because there was no broker for this corporation, no loan fees could be charged by this company.

38. Sterling, McGovern and Bohl placed Plaintiffs into a loan that they knew they were not qualified for and that they could not possible continue paying on. This action by these individuals and this corporation was to obtain fraudulent fees and to help American Express obtain payment in full on the debt owed by Plaintiffs. Additionally, Sterling, McGovern and Bohl knew that World Savings was being taken over by Wachovia and that it was not checking any documentation and was making loans so that the individuals at World Savings could make money immediate before the company was being taken over by Wachovia. Finally, these defendants did not properly prepare truth-in-lending documents and proper disclosures to the Plaintiffs. They did not explain the nature and type of loan that they were putting Plaintiffs into as required by both Federal and State Statutes.

39. B&P code § 17200 provides:

"As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1

(commencing with Section 17500) of Part 3 of Division 7 of

the Business and Professions Code."

40. Plaintiff has been damaged in an unknown amount, but said

amount exceeds more than One Million Five Hundred Thousand

Dollars [$1,500,000.]  Plaintiff will seek to amend this pleading

at time of trial pursuant to proof offered at trial.

//

FIFTH COUNT

ELDER ABUSE, Pursuant to Welf. & Inst. Code, § 15610.30.

[Against Defendants, Sterling, McGovern, Bohl and Does 1 to 100, only]

41. Plaintiff re-alleges each and every allegation contained in

paragraphs 1 through 40, inclusive.

42. Bohl, Sterling and McGovern took, appropriated and retained

plaintiff's property, illegal fees and costs for the "loan."

43. The action of these Defendants have caused the Plaintiffs to

totally deplete their life savings and 401k savings and they

assisted in taking, appropriating or retaining plaintiff's property;

44. That Plaintiffs are in their 70's at the time of the conduct;

45. These Defendants have harmed Plaintiffs.

46.    Defendants' actions are so heinous and egregious that Plaintiff should be awarded punitive damages to make an example of them.

## SIXTH COUNT
## BREACH OF FIDUCIARY DUTIES
## AGAINST BOHL, STERLING, & MC GOVERN

47.    Plaintiffs re-allege each and every allegation contained in paragraphs 1 – 43, inclusive.

48.    Defendants BOHL, STERLING, & MC GOVERN all owed a fiduciary duty as realty agents/brokers and/or alleged brokers/agents for Plaintiffs.

49.    Defendants BOHL, STERLING, & MC GOVERN breached their duties to Plaintiffs by putting Plaintiffs into a very bad loan, so that they could collect a $27,462 in fees, which were also outrageous.

50.    Defendants BOHL, STERLING, & MC GOVERN damaged Plaintiffs as a direct violation of their fiduciary duty.

51.    These Defendants have harmed Plaintiffs.

52.    Defendants' actions are so heinous and egregious that Plaintiff should be awarded punitive damages to make an example of them.

## SEVENTH COUNT
Violations of 18 U.S.C. § 1962 of RICO
Against Defendants BOHL, STERLING, & MC GOVERN AND ALL DOES 1 TO 100

- 14-

53.    Plaintiffs seek damages/relief for violations of 18 U.S.C. section 1962.    This claim targets the criminal enterprise erected by Defendants for the illicit purpose of committing bank fraud through the setting up of false and fraudulent loans to U.S. Banks.  Mickey Singh and McGovern used threats of financial extortion to make the Plaintiffs agree to entering into this outrageous loan for Defendants' personal financial gains.  It is this fraudulent activities that was one of the major factors in the U.S. Economic and Financial meltdown. These Defendants were creating loans that they knew, because of the ages of their victims, that the loans would never be repaid and that the lenders would be writing off big losses or obtaining the collateral properties for a small portion of the real value of the properties.

54.    Plaintiffs incorporate and adopt, as if fully set forth here, the preceding paragraphs of this complaint:  1-53.

55.    This claim for relief arises under § 1962 (a) and (d) of RICO and is asserted against the Defendants set forth above for this Cause of Action.

56.    Each plaintiff is a "person," as that term is defined in §1961 (3) of RICO.

57.    Each defendant is a "person," as that term is defined in §1961 (3) of RICO.

58.    At all times relevant to the events and wrongful conduct alleged herein, each of the Defendants was associated with the association-in-fact enterprise which was engaged in and the activities of which affected intra and interstate commerce – the purpose of which was to further the goals of the enterprise.  Interstate Commerce can be shown as a violation of the mails and wire services which, when used to

defraud someone, is considered Interstate commerce.

59.    As alleged above, defendants have committed and/or aided and abetted a pattern of criminal acts including but not limited to multiple acts of:

a.  Mail fraud, in violation of 18 U.S.C. § 1341 and/or wire fraud, in violation of 18 U.S.C. 1343.   Each of the defendants engaged in multiple acts of mail fraud through their implementation of various components of their fraud.  Each of the various asset transfers and transactions described herein were effectuated through the exchange of information and documents utilizing the U.S. mail, as well as other methods of interstate communication.

60.  (1) Acts of mail fraud and wire fraud include the following:   (1) fraudulently obtaining Plaintiffs signatures on loans which were never properly explained to them; no proper truth in lending disclosures; violating the Fair Debt Collection Act; Elder Abuse, and conveyance of Plaintiff's assets to the Lenders as collateral for a loan that these Lenders and Defendants knew could never be repaid by these Plaintiffs.

61.  Plaintiff is informed and believes, and based upon that information and belief, alleges that the criminal conspiracy performed by these Defendant could not have occurred without the Defendant's using the US mail and US bank wiring system. The use of banks for this conspiracy is also banking fraud, which is also an element of RICO.

62.  Plaintiffs are informed and believe, and based upon that information and belief, allege that these Defendants have been

running this scam for Mickey Sigh, American Express, McGovern, Bohl and Sterling for a number of years and have had numerous victims.

63. These Defendants targeted plaintiffs because of their ages. Plaintiffs are senior citizens and as such, the theft of their property constitutes a financial elder abuse by these Defendants in direct violation of Penal Code § 368, subdivision (d) and grand theft by false pretenses in violation of section 484 and section 487, subdivision (a).

64. Each of the foregoing wrongful acts constitutes "racketeering activity," as that term is defined in § 1961(1) of RICO. Each one of the defendants agreed and conspired with other defendants and others to commit the above-referenced predicate acts of racketeering activity and to violate § 1962(a) and (d) of RICO.

65. In violation of §1962 (a) and (d) of RICO, Defendants conspired to derive and did derive substantial proceeds through the above-referenced pattern of racketeering activity and conspired to use or invest and used or invested such proceeds in the operations of the association-in-fact enterprise of Defendants.

66. As a direct and proximate result of defendants' violations of §1962 (a) and (d) of RICO, Plaintiffs have been injured by the loss of the assets that were looted, thereby depriving the plaintiffs of the rights and benefits due them. Under the provisions of §1964 (c) of Plaintiffs are entitled to treble damages, the costs of bringing this suit and attorneys' fees.

WHEREFORE, Plaintiff prays for judgment as follows:

FIRST COUNT

1.   For an Order of the Court rescinding the loan with Defendants, recorded on December 31, 2007.

SECOND & THIRD COUNTS

2.   For a declaration of the rights and duties of the parties, determining the amount of the true balance of the present loan.

3.   For a declaration of the rights and duties of the parties, declaring that the loan is usurious and cancelling the loan as a matter of law.

4.   For an Accounting of the history of the loan and all loan payments.

5.   For a preliminary and permanent injunction.

FOURTH COUNT

6.   General Damages according to proof., but not less than $1,500,000.

7.   Special Damages according to proof.

FIFTH COUNT

8.   General Damages according to proof.

9.   Special Damages according to proof.

10.   Punitive Damages according to proof.

SIXTH COUNT

11.   General Damages according to proof.

12.   Special Damages according to proof.

13.   Punitive Damages according to proof

SEVENTH COUNT

14.   General Damages according to proof.

15.     Special Damages according to proof.

16.     Treble Damages according to proof.

17.     Attorneys' Fees.

Dated: January 12, 2011                    Law Offices of Craig Boucher
                                              And THE DURST FIRM

                                           /s/ Lee H. Durst

                                    By _____

                                              Lee H. Durst
                                              Attorneys for Plaintiffs

**PROOF OF SERVICE**

State of California, County of Orange:

I am employed in the county and state aforesaid.  I am over the age of 18 and not a party to the within  action; my business address is:  1 City Boulevard West, Suite 850, Orange, California 92868

        On January 12, 2011, I served the foregoing document described as:

<strong><u>FIRST AMENDED COMPLAINT</u></strong>

on the parties listed below in this action by placing a true copy thereof or the originals via electronic mail through the ECF system of the United States District Court to the following

COUNSEL FOR DEFENDANTS<br>
Douglas G. Matsui, Esq. dmatsui@afrct.com<br>
Jeremy E. Shulman, Esq. jshulman@afrct.com<br>
ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

199 S. Los Robles Avenue, Suite 600 Pasadena, California 91101-2459 Tel: (626) 535-1900; Fax: (626) 577-7764

[**X**]      **BY ELECTRONIC MAIL**.  I caused the above document to be electronically mailed through the ECF system of the United States District Court.  Executed on January 12, 2011, at Orange California.

[**X**]      **FEDERAL**.  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

        I declare under penalty of perjury under the laws of United States and the State of California that the above is true and correct.

S/LARRY ROTHMAN

_____<br>
LARRY ROTHMAN